UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DUANE HILL,

Petitioner,

-vs-

**DECISION AND ORDER**
No. 07-CV-6301(VEB)

JAMES A. MANCE, Superintendent of Marcy Correctional Facility,

Respondent.

---

## I. Introduction

Petitioner *pro se* Duane Hill ("Hill") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on June 12, 2007. (Docket No. 1). Hill pleaded guilty in Erie County Court to one count of criminal possession of a weapon in the second degree (N.Y. Penal Law § 265.03(2)) and one count of criminal possession of a weapon in the third degree (N.Y. Penal Law § 265.02(4)). He was sentenced on May 9, 2000, to concurrent terms of three and one-half years on the second degree weapons conviction, and two years on the third degree weapons conviction. Hill did not pursue a direct of appeal of his conviction. Indeed, Hill does not attack the conviction itself or the length of the sentence imposed by the trial court. Rather, Hill's only ground for habeas relief is that the administrative imposition of five years of post-release supervision by the New York State Department of Correctional Services ("NYSDOCS") is unconstitutional:

> Petitioner, after pleading guilty under two Erie County indictments, was sentenced to two determinate sentences. Neither in the sentencing minutes, nor the commitment document did the judge issue a five (5) year period of post-release supervision. In February of 2003, petitioner was notified and required to sign documents of the Division of Parole that indicated that he would serve an

> additional period of five (5) years post-release Petitioner [was] coerced into signing these documents [and] was released on April 8, 2003.
> On May 12, 2006, petitioner's parole was violated and he was assessed to an additional twenty-four months incarceration.[1]
> The administrative addition of five (5) years to petitioner's sentence by the Department of Correctional Services and carried out by the Division of Parole, neither indicated in the sentencing minutes, nor found in the commitment documents, and the additional incarceration of petitioner is illegal and petitioner was therefore denied due process of law.

Petition, ¶7 (Docket No. 1); *see also* Petitioner's Memorandum of Law (Docket No. 2). Along with his accompanying memorandum of law, Hill has submitted copies of the sentence and commitment orders, the sentencing minutes, the parole violation documents, "legal computation data", his state writ of habeas corpus, the County Court decision denying the writ; the appellate court's dismissal of appeal, and "copy of 28 U.S.C. § 2242 and Judge Weinstein's analogy."

In his memorandum of law, Hill provides additional facts concerning the addition of post-release supervision to his sentence. According to Hill, it was not until February 2003, after he had been incarcerated for nearly three years and was first eligible for parole, that he was "notified by Mohawk Facility Parole Officer that he was required to sign documents indicating that he was to serve and additional five (5) years of PRS or else he would not be released from custody." Pet'r Mem., ¶7. On April 8, 2003, Hill was released to parole supervision, having completed three and one-half years of incarceration, the maximum term imposed by the sentencing judge..

On May 12, 2006, Hill states, he "was re-incarcerated by the Division of Parole ("DOP") for an alleged violation of PRS and on June 7, 2006, petitioner was assessed for an additional

---

[1] The inmate locator website operated by NYSDOCS indicates that Hill was released on parole on May 12, 2008. *See* http://nysdocslookup.docs.state.ny.us/GCA00P00/WIQ3/WINQ130 (last accessed Feb. 23, 2009).

twenty-four (24) months of incarceration by the DOP." *Id.*, ¶8. At that time, Hill made a document request under the Freedom of Information Law ("FOIL"), and received a copy of his "Reception/Classification System Legal Date Computation" pertaining to his time spent in NYSDOCS custody. Hill indicates that his receipt of the Legal Date Computation on June 22, 2006, "was the first time petitioner ever saw an indication of PRS in a record of any kind (EXH. E), *outside of his release papers*." Pet'r Mem., ¶8 (emphasis supplied) (Docket No. 2).

Hill indicates that about three months later, on September 20, 2006, he filed a petition for a writ of habeas corpus in Oneida County Supreme Court pursuant to New York Civil Practice Law and Rules ("C.P.L.R.") § 7001 "demanding his immediate release from confinement based on the due process violation of DOCS administratively adding an additional five year period of PRS to his sentence (EXH. F)." Pet'r Mem., ¶9 (Docket No. 2). Hill cited to, *inter alia*, *Earley v. Murray*, 451 F.3d 71, 74 (2d Cir. 2006), a case whose facts were squarely on point with his.

However, on November 1, 2007, a justice of Oneida County Supreme Court denied the writ in a summary decision, stating as follows:

> Petitioner was sentenced as a violent felony offender. He is, accordingly, automatically subject to five years' post-release supervision by operation of Penal Law § 70.45(2), regardless of the absence of a direction thereof from the sentencing judge. Accordingly, the poor person application is moot, the underlying application has no merit, and the application is DENIED.

Pet'r Ex. G, attached to Pet'r Mem. (Docket No. 2).

Hill filed a motion to take a late notice of appeal to the Appellate Division, Fourth Department, which was dismissed as "*unnecessary* inasmuch as no appeal lies from a decision of

the court (*see People ex rel. Aguilar v. Kelly*, 143 AD2d 535) (emphasis supplied).[2]" Pet'r Ex. H, attached to Pet'r Mem. (Docket No. 2). Therefore, Hill stated, he had exhausted his state-court remedies.

On August 6, 2007, respondent filed an answer and memorandum of law in opposition to the petition (Docket Nos. 5 & 6). The only argument asserted by respondent pertained to Hill's alleged failure to exhaust his state-court remedies.

On April 21, 2008, a consent order was entered (Docket No. 7) in this matter, reflecting the parties' consent to jurisdiction by a magistrate judge under 28 U.S.C. § 636(c). The case was transferred from District Judge Larimer to Magistrate Judge Payson.

On May 12, 2008, based on the information on the NYSDOCS Inmate Lookup site, Hill released to parole, following his re-incarceration for 24 months as a result of the parole violation.

On February 4, 2009, this case was reassigned to the undersigned (Docket No. 8). On February 17, 2009, the copy of the reassignment order sent to Hill at Marcy Correctional Facility, the most recent address on file with the Court, was returned to the Clerk of the Court. The docket indicates that delivery was attempted, but the postoffice was unable to forward the correspondence to Hill, as the Correctional Facility stated that Hill's forwarding address was not known. *See* Docket Entry dated February 17, 2009. However, the Court checked the Inmate Lookup website operated by NYSDOCS regarding Hill. As of February 23, 2009, the data in the field "Latest Release Date / Type (Released Inmates Only)" indicates as follows: "05/12/08

---

[2] Under New York law, "[a]n appeal may be taken only from a judgment or an order, and no appeal lies from a decision[.]" *People ex rel. Breeden v. Zelker*, 41 A.D.2d 669, 341 N.Y.S.2d 137 (App. Div. 2d Dept. 1973) (citing N.Y. Civ. Prac. Law & R. 5512(a)); *Casterlin v. Mullin*, 26 A.D.2d 629; *La Barbera Contr. Co. v. City School Dist. of New Rochelle*, 26 A.D.2d 682). However, the Appellate Divisions "have the power to treat the notice of appeal as a proper one upon appeal from the judgment, in the interests of justice . . . ." *Id.* (citing N.Y. Civ. Prac. Law & R. 5520(c))

PAROLE DIV OF PAROLE." The explanatory section for the Inmate Lookup page states that "[i]f the Custody Status item indicates that the inmate has been released from state prison, this item will indicate the date the inmate was released and the type of that release." Thus, it appears that Hill was released to parole supervision on May 12, 2008. If Hill is under supervision of the New York State Division of Parole, it would seem that NYSDOCS necessarily would have a forwarding address for him.

In any event, the lack of an updated address for petitioner at this juncture is not of critical importance. The Court has determined there is no need for further briefing of the issues, and the only further action required must be undertaken by NYSDOCS, as discussed further, *infra*. For the reasons that follow, Hill's request for a writ of habeas corpus is granted.

## II. Discussion

### A. Exhaustion

Section 2254(b)(1) generally requires habeas petitioners to exhaust their state court remedies before bringing their constitutional claims in federal court:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)(i) there is an absence of available State corrective process; or
> >
> > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1)(A), (B). *Accord*, *e.g.*, *Aparicio v. Artuz*, 269 F.3d 78 (2d Cir. 2001) ("If anything is settled in habeas corpus jurisprudence, it is that a federal court may not grant the habeas petition of a state prisoner 'unless it appears that the applicant has exhausted the remedies

available in the courts of the State; or that there is either an absence of available State corrective process; or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.' 28 U.S.C. § 2254(b)(1) . . . .").

Respondent has asserted the defense of non-exhaustion. *See* Respondent's Memorandum of Law ("Resp't Mem.") at 3-4 (citing 28 U.S.C. § 2254(b)(1)(A), (B)). Respondent's argument on exhaustion is contained in one paragraph: "Petitioner has not filed an appeal. His claim has not been exhausted. He has not demonstrated that 'there is an absence of available State corrective process,' or 'circumstances exist that render such process ineffective to protect the rights of the applicant.' 28 U.S.C. § 2254(b)(1)(A)(B). His claim must be dismissed." Resp't Mem. at 4 (Docket No. 6).

Respondent, however, has totally ignored Hill's state-court habeas petition, wherein Hill clearly argued and specifically cited to relevant Supreme Court, Second Circuit, and other federal precedent. Respondent does not assert that Hill's state-court habeas petition was the incorrect vehicle to exhaust this claim. Indeed, New York case law does not support any such proposition. *E.g.*, *People ex rel. Melendez v. New York State Div. of Parole*, 18 Misc.3d 1107(A), 856 N.Y.S.2d 25 (Table) (N.Y. Sup. Dec. 20, 2007) ("Preliminarily, the Court rejects the [Parole] Division's claim that a writ of habeas corpus is not the appropriate forum to seek relief of a post-release supervision claim. Numerous courts have sustained writs of habeas corpus and vacated parole warrants where the sentencing court failed to impose post-release supervision[.] . . . Under federal law, the five-year period of post-release supervision added to [Melendez]'s sentence by DOCS is a nullity based upon the ruling in *Earley v. Murray*, 451 F3d 71 (2d. Cir.), *reh denied* 462 F3d 147 (2d Cir. 2006)). ") (collecting cases)). Therefore, this

Court rejects respondent’s contention that Hill’s claim is unexhausted.

In the alternative, the Court finds that this is a situation where requiring Hill to return to state court and initiate state court exhaustion proceedings at this stage of the proceedings would “render[ ] such process ineffective to protect the rights of the prisoner.” 28 U.S.C. § 2254(b)(1)(B). “[E]xhaustion is not mandated where the state consideration would be either futile or where state procedures do not provide swift review of petitioner's claims.” *Jones v. Tubman*, 360 F. Supp. 1298, 1300 (S.D.N.Y. 1973) (Developments in the Law-Federal Habeas Corpus, 38 Harv. L. R. 1038, 1098 (1970)). As discussed further below, Hill has already served almost the entire five years of post-release supervision that was illegally imposed by NYSDOCS. Therefore, the Court finds that requiring exhaustion “would cause irreparable injury to the petitioner’s rights” since “undue delay in the state courts risks mooting the petitioner’s federal rights before he reaches the federal courts.” Hertz & Liebman, Federal Habeas Corpus Practice and Procedure, § 23.4a(4)(ii)(7) & n. 22 (citing, *inter alia*, *Perry v. Vaughn*, 2005 U.S. Dis. LEXIS 5299, at *16-*18 (E.D. Pa. Mar. 31, 2005) (exhaustion requirement because prisioner’s “maximum sentence will be completed in December, 2006 . . . [and accordingly] [d]elay in determining the merits of petitioner’s claim may render his claim for parole moot” and because of “possibility of prejudice to Petitioner by further delay”) (quotation omitted)).

**B. Timeliness**

AEDPA provides a one-year period of limitation for filing habeas petitions pursuant to Section 2254. See 28 U.S.C. § 2244(d)(1). Depending on the circumstances surrounding the claims, the limitation period runs from one of several dates:

> The limitation period shall run from the latest of–
> (A) the date on which the judgment became final by the conclusion of direct

> review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D). "The limitation period is tolled during the time that a properly filed application for state post-conviction review is pending, *see id.* at § 2244(d)(2), and may be equitably tolled where appropriate, *see Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (*per curiam*)." *Acosta v. Artuz*, 221 F.3d 117, 119 (2d Cir. 2000).

"Where a statute of limitation is not jurisdictional, however, it is considered an affirmative defense and, absent authority to the contrary, must be pleaded by the responding party." *Acosta*, 221 F.3d at 121 (citing Fed. R. Civ. P. 8(c)). The statute of limitations set forth in 28 U.S.C. § 2244(d)(1) is "not jurisdictional, and nothing in AEDPA or in the 2254 Habeas Rules indicates that the burden of pleading the statute of limitation has been shifted from the respondent to the petitioner." *Id.* (citing *Smith*, 208 F.3d at 17). Therefore, the Second Circuit held in *Acosta*, "[t]he AEDPA statute of limitation is . . . an affirmative defense and compliance therewith need not be pleaded in the petition." *Id.* at 122 (citation omitted).

The general rule is that "courts should not raise *sua sponte* nonjurisdictional defenses not raised by the parties." *Id.* (citing *Hardiman*, 971 F.2d at 502 (quoting United States v. Burke, 504 U.S. 229 (1992) (Scalia, J., concurring) ("The rule that points not argued will not be considered is more than just a prudential rule of convenience; its observance, at least in the vast majority of cases, distinguishes our adversary system of justice from the inquisitorial one.")). Because it found that the "AEDPA statute of limitation also implicates values beyond the

concerns of the parties," the Second Circuit "agree[d] with the Tenth and Fifth Circuits that a district court has the authority to raise the AEDPA statute of limitation on its own motion." *Id.* at 123. However, the Second Circuit did not hold that the district court was required to do so, and if it were to raise the issue *sua sponte*, the district court would have to afford the petitioner notice an opportunity to be heard. *Id.* at 24 (holding that although it was not error for the courts below to raise *sua sponte* the untimeliness of the § 2254 petitions, the judgments of dismissal nevertheless had to be vacated because the courts dismissed without affording the petitioners notice and an opportunity to be heard) (citation omitted).

Here, the procedural history as recited at least raises a possibility that the petition may be untimely. However, respondent has not asserted the affirmative defense of untimeliness, and this Court declines to do so *sua sponte*.

**C. Mootness**

Article III, Section 2 of the United States Constitution limits the subject matter of the federal courts to cases that present a 'case or controversy.' *E.g.*, *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). "Thus, where the issues presented by a party in an action are no longer 'live,' or the party lacks a legally cognizable interest in the outcome, the federal action is properly dismissed as moot." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)).

"[I]n *Sibron v. New York*, 392 U.S. 40, 54-56, 20 L.Ed.2d 917, 88 S.Ct. 1889 (1968), the Court, citing various collateral consequences such as deportation, inability to become a citizen, impeachment evidence in future criminal trials, and increased future sentences, asserted a presumption that collateral consequences attach to criminal convictions post-release." *Perez v. Greiner*, 296 F.3d 123, 125 (2d Cir. 2002). Following the Supreme Court's decision in *Sibron*,

the Second Circuit held that "a habeas petition challenging a criminal conviction is rendered moot by a release from imprisonment only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction." *Id.* (internal citations omitted). Thus, when a term of imprisonment has expired "some concrete and continuing injury other than the now-ended incarceration or parole–some collateral consequence of the conviction–must exist if the suit is to be maintained." *Spencer*, 523 U.S. at 7.

Although collateral consequences may be presumed when a petitioner challenges a criminal conviction, since criminal convictions typically involve adverse legal consequences, no such presumption applies in habeas challenges to proceedings other than the underlying criminal convictions. *See United States v. Mercurris*, 192 F.3d 290 (2d Cir.1999) (petitioner challenging a sentence enhancement); *United States v. Probber*, 170 F.3d 345 (2d Cir.1999) (challenge to revocation of supervised release); *Butti v. Fischer*, 385 F. Supp.2d 183, 185 (W.D.N.Y. 2005); *Spencer*, 523 U.S. at 13 (challenge to a finding of parole violation). Courts in this Circuit "have dismissed habeas petitions which challenged parole revocation because the petitioner was no longer in prison." *Fells v. Breslin*, No. 04-CV-03849 (ADS)(JO), 2007 WL 675081, at *3 (E.D.N.Y. Feb. 26, 2007 (citing *Martinson v. United States Parole Comm'n*, No. 02-CV-4913, 2005 U.S. Dist. LEXIS 10648, at *16-18 (S.D.N.Y. June 1, 2005) (citing *Hicks v. Lacy*, Nos. 99 Civ. 4523 and 00 Civ. 2307, 2003 U.S. Dist. LEXIS 19756, at *4 (S.D.N.Y. Nov. 4, 2003) ("A habeas petitioner no longer in custody who is challenging the result of a parole revocation hearing must therefore demonstrate a concrete, ongoing injury-in-fact attributable to his parole revocation"). "Courts in other circuits have also dismissed as moot habeas petitions challenging parole decisions once the petitioner had been released from incarceration." *Fells*, 2007 WL

675081, at *3 (citing *Martinson*, 2005 U.S. Dist. LEXIS 10648, at * 17 (citing *Vandenberg v. Rodgers*, 801 F.2d 377, 378 (10th Cir.1986) ("We hold that Mr. Vandenberg's appeal is moot. His petition for habeas corpus merely challenges determinations that delayed his parole date; and because he is already released from custody on parole, we find no purpose in reaching the merits of his arguments"); *Brady v. United States Parole Comm'n*, 600 F.2d 234, 236 (9th Cir.1979) ("Appellant's § 2241 habeas corpus petition attacks the Parole Commission's decision to keep him in custody. He is now on parole and does not challenge the validity of his original conviction. On this record the case is moot.")).

Here, Hill has been released from prison. He is under the supervision of the New York State Parole Division. However, he technically is not "on parole"; rather, he is under a term of post-release supervision, which is different than parole. As discussed further below, a term of post-release supervision is part of a defendant's sentence. Thus, Hill, even though not incarcerated, is suffering "continuing injury" based on NYSDOCS erroneous addition a period of post-release supervision to his determinate sentence. *See People v. Catu*, 4 N.Y.3d 242, 4 N.Y.3d 242, 245, 825 N.E.2d 1081, 1082, 792 N.Y.S.2d 887, 888 (N.Y. 2005) ("Postrelease supervision is a direct consequence of a criminal conviction. In eliminating parole for all violent felony offenders in 1998, the Legislature enacted a scheme of determinate sentencing to be followed by periods of mandatory postrelease supervision (*see* L. 1998, ch. 1 (Jenna's Law)), and defined each determinate sentence to 'also include[ ], as a part thereof, an additional period of post-release supervision' ([N.Y.] Penal Law § 70.45(1); *see also* Senate Mem. in Support, 1998 McKinney's Session Laws of N.Y., at 1489 (describing postrelease supervision as 'a distinct but integral part of the determinate sentence')). Whereas the term of supervision to be

imposed may vary depending on the degree of the crime and the defendant's criminal record (*see* [N.Y.] Penal Law § 70.45(2)), imposition of supervision is mandatory and thus 'has a definite, immediate and largely automatic effect on defendant's punishment.'") Accordingly, the Court does not find that Hill's habeas petition has been mooted.

**D. Merits of Petitioner's Due Process Claim**

As an initial matter, the Court wishes to point out that respondent has offered no argument whatsoever in opposition to the substance of Hill's claim.

Where, as here, a petitioner's habeas claim has been "adjudicated on the merits" by the state court, review of the state court's decision is subject to the deferential standard set out in section 104(3) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214, 1219 (codified at 28 U.S.C. § 2254(d)). Under AEDPA, an application for a writ of habeas corpus may not be granted unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Hill is, and has been, subjected to a term of post-release supervision that appears, on this record, to have been imposed in violation of clearly established Federal law as determined by the United States Supreme Court in *Hill v. United States ex rel. Wampler*, 298 U.S. 460 (1936). *See Earley v. Murray*, 451 F.3d 71, 74-77 (2d Cir. 2006) (*Earley* I ), *reh'g denied*, 462 F.3d 147 (2d Cir. 2006) ( *Earley II* ), *cert. denied*, 127 S.Ct. 3014 (2007).

In *Earley I*, the Second Circuit Court of Appeals addressed the same situation presented here–namely, the subsequent imposition, by a state administrative agency (i.e., NYSDOCS), of a term of post-release supervision, despite the failure of the sentencing court to make any

reference to mandatory post-release supervision during sentencing. *See Earley I*, 451 F.3d at 73. Relying on *Hill v. Wampler,* the Second Circuit held in *Earley I* it was clearly established Federal law that "[t]he only cognizable sentence is the one imposed by the judge. Any alteration to that sentence, unless made by a judge in a subsequent proceeding, is of no effect." *Earley I*, 451 F.3d at 75 ("Seventy years ago, the Supreme Court established that the sentence imposed by the sentencing judge is controlling; it is this sentence that constitutes the court's judgment and authorizes the custody of a defendant.") Petitioner Earley's sentence had been administratively amended after sentencing by NYSDOCS to include a PRS term, without the involvement of a judge or notice to Earley . *Id.* at 73. Similarly, Hill's sentence appears to have been administratively amended sometime between his sentencing in 2000 and his parole in 2003. It is not apparent from the record precisely when or how this occurred. I note the Second Circuit's comment in *Earley II* that prior to *Earley II*, "New York courts regularly fail[ed] to inform defendants of mandatory PRS terms but consider[ed] them part of those defendants' sentence nonetheless." *Earley II*, 462 F.3d at 150.

The sentence imposed on Hill by the sentencing court on the maximum of three and one-half years in prison. The judgment authorized the state to incarcerate him for three and one-half years and no more. Any addition to that sentence not imposed by the judge was unlawful. *Accord Earley I*, 451 F.3d at 75. However, Hill "was subjected to further custody," for "[p]ost-release supervision, admitting of the possibility of revocation and additional jail time, is considered to be 'custody.'" *Id.* (citing *Jones v. Cunningham*, 371 U.S. 236, 240-43 (1963) (holding that parole satisfies the "in custody" requirement of habeas petitions); *Peck v. United States*, 73 F.3d 1220, 1224 n. 5 (2d Cir.1995) (holding that supervised release satisfies the "in custody" requirement of

habeas petitions)). Importantly, in *Earley I*, the Second Circuit explicitly rejected the reasoning employed by the state court judge in Hill's case when dismissing the state habeas petition–that because the five-year PRS was mandated by statute and it necessarily was part of Hill's sentence by operation of law. *See Earley I*, 451 F.3d at 76. The Court is extremely disturbed that the state court blatantly ignored these clear precedents from the Second Circuit and allowed the constitutional violation to go unremedied.

When NYSDOCS discovered the oversight made by Hill's sentencing judge, the proper course would have been to inform the state of the problem, not to modify the sentence unilaterally. *Earley I*, 451 F.3d at 76. At that point, the district attorney's office then could have moved to correct the sentence through a judicial proceeding, after notice to petitioner and in his presence, before a court of competent jurisdiction. *Id.* (citing *Wampler*, 298 U.S. at 464) ("If the [order of commitment] is inaccurate, there is a remedy by motion to correct it to the end that it may speak the truth.")).

**III. Conclusion**

Because clearly established Supreme Court precedent renders the five-year PRS term administratively added to Hill's sentence by NYSDOCS invalid, *Earley I*, 451 F.3d at 77, Hill is entitled to a writ of habeas corpus "excising the term of post-release supervision from [Hill's] sentence and relieving him of any subsequent penalty or other consequence of its imposition[,]" *Id.* This ruling is not intended to preclude the state from moving in the New York courts to modify Hill's sentence to include the mandatory post-release supervision term. *See id.* & n.2 ("It is not clear whether such a motion could be made at this time under New York law, which appears to require such motions to be filed within one year of the entry of judgment. N.Y. CRIM.

PROC. LAW § 440.40. Any such questions will be for the New York courts to decide in the event such an application is made.”).

**IT IS SO ORDERED.**

/s/ *Victor E. Bianchini*

VICTOR E. BIANCHINI
United States Magistrate Judge

DATED: February 23, 2009
Rochester, New York.